**Ruth STALLING, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (COMPREHENSIVE MH/MR PROGRAM), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1999.

Decided April 8, 1999.

---

David S. Desson, Philadelphia, for petitioner.

Sandra R. Craig, Philadelphia, for respondent.

Before KELLEY, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

Claimant, Ruth Stalling, petitions for review of the August 19, 1998, order of the Workers' Compensation Appeal Board (Board) affirming and modifying the order of the Workers' Compensation Judge (WCJ), which, *inter alia,* granted the Pennsylvania Workers' Compensation Security Fund's (PWCSF) request for subrogation. The question presented is whether payments made by the Pennsylvania Insurance Guaranty Association (PIGA)[1] to claimant in settlement of her third-party civil action arising out of her work-related injuries are subject to subrogation under the Workers' Compensation Act.

Stalling sustained a work-related injury on June 20, 1984, while working for Comprehensive MH/MR Services (employer) in the Birchwood Apartment complex. Pursuant to a Notice of Compensation Payable, Rockwood Insurance Company, employer's insurance carrier at the time of the injury, initially paid claimant's compensation benefits. However, in 1991, Rockwood was liquidated and PWCSF assumed payment of claimant's benefits.[2]

---

1. PIGA is an association of all property and casualty insurers in Pennsylvania, each of whom, by statute, must participate as a member as a precondition to its authority to write property and casualty insurance within the Commonwealth. The Association steps into the shoes of insolvent carriers to investigate, litigate and pay covered claims arising prior to the insolvency or within thirty days thereafter. Members are assessed in the amounts necessary to pay the obligations and expenses of the Association. Act of November 25, 1970, P.L. 716, *as amended, formerly* 40 P.S. §§ 1701.101 – 1701.605. This statute, in effect at the time of events relevant to this appeal was repealed by Section 2 of the Act of December 12, 1994, P.L. 1005 and was recodified by the same Act as §§ 991.1801 – 991.1820 within The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §§ 341 – 991.1820. At that time, the Association's name was changed to "Pennsylvania Property and Casualty Guaranty Association."

2. Although different in many technical respects, PWCSF functions much like PIGA. PWCSF is a fund created by statute which pays benefits to injured workers covered under the Workers' Compensation Act when their employer's workers' compensation carrier has become insolvent. PWCSF is administered by the Commissioner of Insurance and is funded by contributions from insurers mandated as a precondition to the privilege of engaging in the business of workers' compensation insurance in the Commonwealth. Act of July 1, 1937, P.L. 2532, *as amended,* 77 P.S. §§ 1051 – 1066.

In June 1986, Stalling brought suit against Birchwood for the injuries she sustained in 1984. At the time of the accident, Birchwood had liability insurance through Mutual Fire, Marine and Inland Insurance Company. In December 1986, Mutual Fire was ordered into rehabilitation and responsibility for Stalling's claim was assumed by PIGA. In April 1992, Stalling settled her claim against Birchwood for $199,000.00. Payment of the settlement amount was made by PIGA.

In August 1992, PWCSF filed a Petition for Suspension that sought *inter alia*, enforcement of its subrogation rights under Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.[3] In September 1992, Stalling filed a Petition for Review in this court seeking a declaration that the funds paid by PIGA were not subject to a Section 319 lien. PWCSF filed preliminary objections to the petition and on July 23, 1993, this court sustained the objections and dismissed Stalling's petition on the ground that it "seeks to establish in advance the validity of a defense to be presented before an administrative forum and that such a request does not involve a dispute recognized or acknowledged for review under the declaratory judgment procedure." *Stalling v. Workmen's Compensation Security Fund*, No. 316 M.D. 1992 (Pa. Cmwlth. filed July 23, 1993). Our Supreme Court affirmed in a *per curiam* order dated April 22, 1994. *Stalling v. Workers' Compensation Security Fund*, 536 Pa. 537, 640 A.2d 409 (1994).

On July 18, 1996, the WCJ issued a decision dismissing PWCSF's petitions, but granting its request for subrogation. Specifically, the WCJ ordered Stalling to reimburse PWCSF in the amount of $138,430.00 (the balance of Stalling's third-party recovery minus attorney's fees and costs) or by a future credit against total disability benefits. PWCSF filed an appeal with the Board from the portion of the WCJ's order permitting the lien to be satisfied by crediting future payments and Stalling appealed from the portion holding that the PIGA payment was subject to the Section 319 lien.

On August 19, 1998, the Board affirmed the WCJ's decision as to PWCSF's right to subrogation and modified the WCJ's order to require Stalling to reimburse PWCSF the amount of $138,430.00. The present appeal followed.

On appeal, Stalling claims that the Board erred in allowing subrogation. This is a question of law over which we exercise plenary review. Section 319 of the Workers' Compensation Act provides, in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer....

77 P.S. § 671. Our Supreme Court, in *Winfree v. Philadelphia Electric Co.*, stated unequivocally that an employer's subrogation right under Section 319 is absolute. 520 Pa. 392, 397, 554 A.2d 485, 487 (1989). Moreover, our courts have long held that the right may be asserted by the employer's insurance carrier, since it has actually made the payments. *Brown v. Travelers Ins. Co.*, 434 Pa. 507, 513, 254 A.2d 27, 29 (1969). *See also Mayhugh v. Somerset Tel. Co.*, 265 Pa. 496, 109 A. 213 (1920).

It is undisputed that a successful claim against a responsible third party has been asserted, settled and paid in this case, triggering Section 319 subrogation rights. Stalling does not deny that in the ordinary case, these rights would pass to PWCSF for that portion of compensation payments it assumed. She argues, however, that no right of subrogation may be asserted here because her third party claim was paid by PIGA. This argument is grounded upon language in the Pennsylvania Insurance Guarantee Association Act which states that, to be covered by PIGA, a claim: "shall not include any amount due any insurer, reinsurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise." Section 103(5)(b), 40

---

3. A Petition for Termination/Suspension and to Review Medical Treatment, which alleged that claimant was fully recovered from her work injuries as of October 30, 1991, was litigated at the same time as this suspension petition. The denial of the termination petition was not appealed.

P.S. § 1701.103(5)(b). She argues that PWCSF is an insurer, and thus unable to assert a claim as subrogee against PIGA. We disagree.

First, whether PIGA *could have* disallowed that portion of Stalling's claim over which PWCSF asserts subrogation rights is not before this court. PWCSF is simply seeking to enforce its right of subrogation in proceeds which Stalling has already recovered. PIGA did not disallow the claim, but paid it. Nothing in the record suggests that PIGA in any way limited its settlement payment to those damages for which PWCSF could not seek subrogation. Stalling, based upon her construction of the PIGA statute, asks us to assume that PIGA did so limit its payment, but we will not engage in such speculation. Thus, PIGA's theoretical right to disallow coverage is irrelevant.

Moreover, PIGA's right to assert such a defense was before the Superior Court of Pennsylvania in the case of *Miles v. Van Meter,* 427 Pa.Super. 278, 628 A.2d 1159 (1993), *alloc. denied,* 537 Pa. 611, 641 A.2d 311 (1994), and we agree with that court that PWCSF is not an insurer whose claim would be barred by Section 103(5)(b). An insurer is defined in the statute as follows: " 'Insurer' or 'member insurer' means any insurance company, association or exchange which is authorized to write and is engaged in writing within this Commonwealth, on a direct basis, property and casualty insurance policies." Section 103(2), 40 P.S. § 1701.103(2). PWCSF is neither a company, association nor exchange, and does not write any policies of insurance, in the Commonwealth or anywhere else. It is simply a fund administered by the Commissioner of Insurance which assumes payment of benefits in the event a workers' compensation carrier becomes insolvent. In asking us to reject the analysis of *Miles,* Stalling argues that the property and casualty limitation in this statutory definition applies only to delineate the insurers which are "members" of the association, and not to similiarly limit the insurers barred from asserting claims under Section 103(5)(b).[4] This argument is of no assistance to Stalling. The issue here is not whether the property and casualty limitation applies to Section 103(5)(b), but whether PWCSF is an insurer. Even if we were to disregard the statutory definition (which specifically refers to both "insurers" and "member insurers") entirely, PWCSF is simply not an "insurer" within the ordinary and commonly understood meaning of that term. PWCSF has no obligation of indemnity, but simply "fronts" payments which it may recover (to the extent funds are available) from the estate of the insolvent carrier or any other responsible party (except the employer).[5] Since PWCSF is not an insurer, Section 103(5)(b) would not apply, even if PIGA had chosen to assert it as a defense.

Accordingly, we affirm the order of the Board and remand for a calculation of the amount remaining to be reimbursed, and the appropriate grace period, if any.[6]

### ORDER

AND NOW, this 8th day of April, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed and this case is remanded for a calculation of the amount remaining to be reimbursed, and the appropriate grace period, if any.

Jurisdiction relinquished.

---

4. In this regard, Stalling relies upon *Pennsylvania Insurance Guaranty Ass'n v. Charter Abstract Corp.,* 790 F.Supp. 82 (E.D.Pa.1992), with which the Superior Court (in dicta) disagreed. However, in *Charter,* the claimant was, in fact, an insurer, albeit not one which wrote *property and casualty* policies. Thus, we need not here reach the issue over which the Superior Court and the District Court disagreed.

5. *See* Section 11, 77 P.S. § 1061(4).

6. In light of rulings in its favor by both the WCJ and the Board, with respect to PWCSF's right of subrogation, PWCSF discontinued payment of Stalling's workers' compensation benefits. As such, the amount of the lien must be recalculated to reflect that credit taken by PWCSF.