760 A.2d 1198 (2000)
Janet E. CULLEN and Michael Cullen, w/h, Petitioners,
v.
PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION and Medical Professional Liability Catastrophe Loss Fund and U.S. Fire Insurance Company and Walter W. Dearolf, III, M.D., Respondents.
Commonwealth Court of Pennsylvania.
Argued September 11, 2000.
Decided October 17, 2000.
*1199 Tobias L. Millrood, Philadelphia, for petitioners.
Zella Smith Anderson, Harrisburg, for Medical Professional Liability Cat. Loss Fund.
Charles M. Schultz, West Conshohocken, for U.S. Fire Ins. Co.
Lise Luborsky, Philadelphia, for Property and Cas. Ins. Guar. Ass'n Pa.
BEFORE: COLINS, Judge, LEADBETTER, Judge, LEDERER, Senior Judge.
LEADBETTER, Judge.
Before this court is the summary judgment motion filed by Janet E. and Michael Cullen in their declaratory judgment action seeking a determination as to whether Janet Cullen's employer is entitled to subrogation rights in the settlement the Cullens obtained in a third-party tort action.[1] Specifically at issue is the question of whether the subrogation rights of an employer under Section 319 of the Workers' Compensation Act[2] [hereafter simply Section 319] are abrogated when the third-party recovery is paid pursuant to the Pennsylvania Property and Casualty Insurance Guaranty Association Act (Guaranty Association Act).[3] Section 1817(a) of the Guaranty Association Act [hereafter simply Section 1817(a) ], provides that:
(a) Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, workers' compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

40 P.S. § 991.1817(a) [emphasis added]. For the reasons stated below, we conclude that, where applicable, Section 1817(a) supercedes Section 319.
Janet Cullen sustained a work-related injury in 1993 and received benefits pursuant to a notice of compensation payable. At the time of her injury, employer's workers' compensation carrier was U.S. Fire *1200 Insurance Company. U.S. Fire ultimately paid Cullen $168,905.52 in workers' compensation benefits. As a result of medical treatment Janet received for her work-related injury, the Cullens filed a malpractice action against various medical providers, including Walter Dearolf, III, M.D. The malpractice action eventually settled in July 1998 for the total sum of $450,000.00, wherein Janet received $325,000.00 in settlement of her claim and her husband received $125,000.00 in settlement of his loss of consortium claim.[4] Prior to the Cullens' settlement of the third-party action, however, Dr. Dearolf's insurance carrier, Physician's Insurance Company (PIC), was ordered into liquidation by this court. Therefore, pursuant to the Guaranty Association Act, the Pennsylvania Property and Casualty Insurance Guaranty Association assumed the handling of PIC's claims, including the Cullens'. As the guarantor of PIC, the Association was responsible for the first $200,000.00 of the settlement amount and the Fund was responsible for the remaining balance of $250,000.00. In January 1999, the Association tendered $31,094.48 ($200,000.00 minus the amount of workers' compensation benefits employer paid to Cullen) and the Fund tendered $250,000.00.
In July 1998, shortly after the Cullens settled their third-party medical malpractice action, U.S. Fire filed a petition to enforce subrogation rights, alleging it was entitled to subrogate against Cullens' third-party recovery in the amount of $168,905.52 for workers' compensation benefits paid to Cullen as a result of her injury. Thereafter, in January 1999, the Cullens filed the present action seeking a declaratory judgment that both Section 319 and Section 1817(a) could not be given effect because this would require Cullen to deduct the amount she received in workers' compensation benefits twice from her third-party recovery when she only received such benefits once.[5] The proceedings regarding U.S. Fire's petition were stayed by order of this court on April 7, 2000.
In support of their motion for summary judgment, the Cullens argue that U.S. Fire is precluded from subrogating against Janet Cullen's third-party recovery because pursuant to Section 319, U.S. Fire "shall be subrogated to the right of [its] employe."[6] 77 P.S. § 671 [emphasis added]. Therefore, since under Section 1817(a) Cullen had no right in the medical malpractice action to recover for the losses compensated by U.S. Fire, U.S. Fire has no right to subrogation from her recovery, which was necessarily for other losses. We agree. As we noted in Michel v. City of Bethlehem, 84 Pa.Cmwlth. 43, 478 A.2d 164 (1984), "the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated." 478 A.2d at 166.[7]
We do not in any way cast doubt upon the viability of the cases relied upon by U.S. Fire to support its position, namely PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley), 665 A.2d 538 (Pa.Cmwlth.1995) and Bumbarger v. Bumbarger, 190 Pa.Super. 571, 155 *1201 A.2d 216 (1959).[8] These cases stand for the proposition that subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the fact-finder in their action, characterize the nature of the third-party recovery. That remains the law. Here, however, we are not concerned with the outcome of a third-party action, which is largely controlled by the employee and tortfeasor (and in which the employer ordinarily has no representation) but with a statute that limits the employee's right to recover against the third party. This is a critical distinction in light of the language of Section 319, which allows subrogation to the employee's rights.
Our analysis today rests upon principles of statutory construction. In construing the relationship between the two statutory provisions, we must either conclude that the legislature intended the offset of Section 1817(a) to bar subrogation under Section 319, or conclude that it intended a claimant's third-party recovery to be subject to a double offset. It seems clear beyond peradventure that the General Assembly intended the former and not the latter. To allow a double offset would be manifestly inconsistent with the humanitarian purposes of the Act. Further, as noted above, it would be inconsistent with the plain language of Section 319 that "the employer shall be subrogated to the right of the employe" because it would give the employer greater rights than those of the employee. Finally, as Justice Zappala noted with respect to the former version of Section 1817:
Intending the Association to be a stopgap measure, the legislature provided that a claimant who could seek recovery under a policy other than that of the insolvent insurer must first exhaust his right under such policy. 40 P.S. § 1701.503(a). This provision reflects the legislature's intent that fiscally solvent insurers, which are contractually obligated to pay a claim, be the primary source of payment.

... The legislative scheme provided that the Association would be the last resort for payment of a claim. By requiring that solvent insurers who had received premiums pay such claims first, the legislature sought to insure that the Association would not provide coverage for risks for which those insurers had contracted and been compensated.
I concur with the analysis of the Washington Court construing the identical position under its law in Prutzman v. Armstrong, 90 Wash.2d 118, [122,] 579 P.2d 359, [362] (1978). The court stated,
The act makes available a source of funds for payment to claimants of insurers which later become insolvent, only to the extent that the claimant has no other source of insurance proceeds from which to recover for his losses. It does not provide the claimant with an alternative source of proceeds equal to the insolvent insurer's coverage limits less whatever amount he may have unilaterally agreed to accept in settlement of claims under other insurance policies.
*1202 Bethea v. Forbes, 519 Pa. 422, 428-29, 548 A.2d 1215, 1218 (1988) (Justice Zappala concurring).
Likewise, in the present context, the purpose of Section 1817(a) is to allocate the risk of loss to the solvent insurance company (here, U.S.Fire) rather than the Association, not to alter the rights of the individual who has suffered the loss. Other similar statutory schemes have consistently been interpreted in this fashion. See, e.g., Michel (regarding governmental immunity and private insurance) and Updike v. Workers' Compensation Appeal Bd. (Yeager Supply, Inc.), 740 A.2d 1193 (Pa.Cmwlth.1999) (regarding workers' compensation benefits and motor vehicle tort actions under former Sections 1720 and 1722 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1720 and 1722).
For these reasons, we conclude that where the third-party tortfeasor's insurance carrier becomes insolvent requiring the Association to act as guarantor, the statutory scheme shifts the normal burden of loss and requires the solvent insurer to remain responsible for the payment of workers' compensation benefits. In this circumstance, the claimant may not recover from the third-party tortfeasor those losses which have been satisfied by workers' compensation benefits, and the workers' compensation carrier is precluded from exercising its traditional right of subrogation. The Cullens' motion for summary judgment is granted.[9]

ORDER
AND NOW, this 17th day of October, 2000, the motion for summary judgment filed by Janet E. and Michael Cullen is GRANTED and it is declared that U.S. Fire Insurance Company has no subrogation rights to any funds received by or payable to Janet E. Cullen in connection with her third-party lawsuit against Walter W. Dearolf, III, M.D.
Further, the cross-motion for summary judgment filed by the Pennsylvania Medical Professional Liability Catastrophe Loss Fund is DISMISSED as moot.
NOTES
[1] The Pennsylvania Medical Professional Liability Catastrophe Loss Fund (Fund) has filed a cross-motion for summary judgment. Due to our resolution of the Cullens' motion, the Fund's motion is dismissed as moot.
[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 671. Section 319 states in pertinent part that "[w]here the compensable injury is caused in whole or in part by the act or admission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer ..." (footnote omitted).
[3] Act of May 17, 1921, P.L. 682, as amended, 40 P.S. §§ 991.1801-991.1820. The Guaranty Association Act was added by the Act of December 12, 1994, P.L. 1005.
[4] The release provided that "the parties do not intend to have Janet Cullen be subject to both a [setoff pursuant to the Act] in the amount of $168,905.52 (WC lien) and to repay the workers' compensation lien ..." Appendix of Exhibits to Cullens' Motion for Summary Judgment, Exhibit L, Paragraph 7A.
[5] The Cullens' declaratory judgment action was commenced against the Association, the Fund, U.S. Fire and Dr. Dearolf.
[6] Our courts have long recognized that the employer's right to subrogation may be asserted by the employer's insurance carrier, since it is the carrier who has actually made the payments. See Stalling v. Workers' Compensation Appeal Bd. (Comprehensive MH/MR Program), 727 A.2d 1215, 1217 (Pa.Cmwlth.1999).
[7] While Michel involved contractual subrogation and a damage exclusion under 42 Pa.C.S. § 8553(d), the principle is the same.
[8] In PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley), 665 A.2d 538 (Pa.Cmwlth.1995), this court held that employer was entitled to subrogate against a third-party compromise settlement, despite the fact the settlement agreement contained express language that the third-party tortfeasor was not liable for the claimant's injury and a subsequent trial on liability found for the third-party tortfeasor as well. This court concluded that to hold otherwise would provide the claimant a windfall by permitting her a double recovery for her husband/employee's death. Id. at 543. In Bumbarger v. Bumbarger, 190 Pa.Super. 571, 155 A.2d 216 (1959), the Superior Court held that despite the fact that the claimant's third-party recovery was designated as damages for pain and suffering only, employer was not precluded from subrogating against the settlement where the employer was not a party to the third-party action or settlement. The court also held that the employee and the third-party could not deprive the employer of his subrogation right by designating a portion of the recovery as damages for pain and suffering. Id. at 219.
[9] Based on our resolution of the Cullens' motion, we need not address U.S. Fire's contention that it is entitled to a hearing to determine the correct apportionment of the settlement proceeds between Cullen and her husband.