**Joan FETTERS and Albert Fetters, h/w, Petitioners,**

**v.**

**PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Pennsylvania Medical Professional Catastrophe Fund, EBI Companies, Inc., and Dennis DeVita, M.D., Respondents.**

Commonwealth Court of Pennsylvania.

Heard April 17, 2001.

Decided July 26, 2002.

Publication Ordered Aug. 21, 2002.

Stephen R. Kurens, Lansdale, for petitioners.

Brian L. Calistri, Philadelphia, for respondent, EBI Companies, Inc.

Lise Luborsky, Philadelphia, for respondent, PA Casualty Insurance Guaranty Assoc.

Daniel L. Grill, Lancaster, for respondent, D. Devita.

OPINION BY Judge LEADBETTER.

Before this court for resolution are cross motions for summary judgment; one motion is filed by Joan and Albert Fetters and EBI Companies, Inc. (collectively, the Fetters),[1] and the other is filed by the Pennsylvania Property and Casualty Insurance Guaranty Association (Guaranty Association). Both motions have been filed in the context of the Fetters' declaratory judgment action, which seeks a declaration regarding the applicability of the

1. Joan and Albert Fetters are husband and wife and EBI Companies is the workers' compensation carrier for Joan Fetters' employer, Scotty's Fashions.

Pennsylvania Property and Casualty Insurance Guaranty Association Act (Guaranty Association Act)[2] to the Fetters' medical malpractice action against the doctor who treated Joan for a work-related injury. In their motion for summary judgment, the Fetters contend that the Guaranty Association Act does not apply to the medical malpractice action, while the Guaranty Association contends in its motion that the Guaranty Association Act does apply, thereby entitling it to an offset for the amount of workers' compensation benefits paid to Joan Fetters.[3]

According to the pleadings, Joan Fetters sustained a work-related injury in 1993 for which she received approximately $95,000.00 in workers' compensation benefits. At the time of Joan's injury, her employer was insured by EBI. The Fetters subsequently filed a medical malpractice action against several defendants, including Dr. DeVita, the doctor who treated Joan for her work injury. Dr. DeVita had liability coverage through PIC Insurance Group, Inc. (PIC). PIC was ordered into liquidation by this court in January 1998.

In September 1998, the Guaranty Association, through Dr. DeVita's attorney, offered to settle the Fetters' claim for $200,000.00, contingent upon the Guaranty Association's receipt of a credit or offset for the amount of workers' compensation benefits paid to Joan.[4] In conjunction with the settlement offer, EBI informed the Fetters that it would assert its statutory lien[5] against any settlement or verdict received by the Fetters.

Thereafter, the Fetters commenced the underlying declaratory judgment action,[6] seeking a determination that the Guaranty Association Act does not apply to their action and that the Guaranty Association is not entitled to a credit for workers' compensation benefits paid to Joan Fetters. In their brief,[7] the Fetters set forth several grounds in support of their contention that the Guaranty Association Act does not apply to their medical malpractice action.

---

**2.** Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §§ 991.1801–991.1820. The Guaranty Association Act was added by the Act of December 12, 1994, P.L. 1005, and became effective sixty days after its enactment.

**3.** Section 1817(a) of the Guaranty Association Act provides that:

(a) Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, *worker's compensation,* Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. *Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under other insurance.*

40 P.S. § 991.1817(a) (emphasis added).

**4.** The Guaranty Association disputes the accuracy of these averments. Particularly, the Association avers that it has no knowledge as to the September 1998 settlement offer, admitting only that counsel for Dr. DeVita made an offer to settle the case.

**5.** Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671, provides that "[w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer ...." (footnote omitted).

**6.** The action was brought against the Guaranty Association, the Pennsylvania Medical Professional Catastrophe Fund, EBI and Dr. DeVita.

**7.** The brief in support of the summary judgment motion has been filed on behalf of the Fetters only.

First, they argue that the Act does not apply because it was not in effect at the time Joan sustained her injury. Rather, the former Act, namely the Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, P.L. 716, *as amended*, 40 P.S. §§ 1701.101 1701.605, repealed by the Act of December 12, 1994, P.L. 1005, was in effect. Unlike the current Act, the Pennsylvania Insurance Guaranty Association Act did not entitle the Pennsylvania Insurance Guaranty Association to an offset for benefits paid by workers' compensation insurance. *See* Section 103, 40 P.S. § 1701.103; Section 503, 40 P.S. § 1701.503.

In support of their contention that the Guaranty Association Act is not applicable, the Fetters also rely on the legal principles that (1) substantive rights are governed by the law in effect at the time the cause of action accrues, *i.e.*, the date of injury in this case, and (2) legislation affecting substantive rights cannot be applied retroactively absent a clear intent to do so by the legislature. Based upon these principles, the Fetters contend that application of the current Guaranty Association Act to their action impermissibly affects their substantive right to collect wage loss and medical expenses from Dr. DeVita and constitutes an unlawful retrospective application of legislation contrary to the intent of the legislature.

Finally, the Fetters (and EBI in a supplemental brief) argue that application of the Guaranty Association Act to the tort action would impermissibly abridge EBI's statutory right to subrogation, which also accrued at the time of Joan Fetter's injury. *See generally Byard F. Brogan, Inc. v. Workmen's Comp. Appeal Bd. (Morrissey)*, 161 Pa.Cmwlth.453, 637 A.2d 689 (1994) (workers' compensation carrier's right to subrogate against a third party recovery, a substantive right, accrues at the time of the injury and cannot be abridged by subsequent legislation absent a clear statutory intent that new legislation be applied retroactively).

Contrary to the above arguments, the Guaranty Association argues that the Guaranty Association Act applies to the Fetters' action pursuant to the express terms of the statute because the triggering date of the Act is the date of the insurer's insolvency and the subsequent order of liquidation, not the date the underlying claim arose. *See* Sections 1802 and 1803, 40 P.S. §§ 991.1802 and 1803.[8] Therefore, the Association argues that since PIC became an insolvent insurer after the effective date of the Act, the Act and all the limitations provided therein apply to any claim which would have been covered by PIC absent its insolvency and liquidation.[9]

8. The Act defines a "covered claim" as an "unpaid claim, including one for unearned premiums, submitted by a claimant which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article...." Section 1802, 40 P.S. § 991.1802. An "insolvent insurer" is "[a]n insurer licensed to transact insurance in this Commonwealth ... and against whom an order of liquidation with a finding of insolvency has been entered after the effective date of this article by a court of competent jurisdiction...." *Id.*

9. In addition, the Association notes the very practical fact that the date of the insurer's insolvency/liquidation order creates the Association's ability to pay claims against the insolvent insurer. Section 1808 of the Guaranty Association Act provides:

For purposes of assessment, the association shall be divided into two accounts: (1) an automobile or motor vehicle insurance account; and (2) an account for all other insurance to which this article applies. Subsequent to an insurer having been determined to be an insolvent insurer, the association shall allocate between the two accounts and assess member insurers sepa-

The Association also argues that the present Act precludes EBI from recovering its subrogation interest because it prohibits payment of "any amount ... due any ... insurer ... as subrogation recoveries or otherwise." Section 1802, 40 P.S. § 991.1802. The Association further contends that the rights of a subrogee cannot be greater than that of the subrogor. *See Cullen v. Pennsylvania Prop. and Cas. Ins. Guar. Ass'n,* 760 A.2d 1198, 1200 (Pa. Cmwlth.2000). Therefore, since the Fetters' recovery against the Association is limited by the offset provision, the workers' compensation carrier is limited as well and cannot recover the amount of its subrogation interest from any recovery funded by the Association.[10] *Cullen,* 760 A.2d at 1201–02.

Although the issue has not yet been directly addressed by our courts, review of the relevant statutes and caselaw supports the conclusion that the Guaranty Associa-

tion Act applies to the Fetters' action and, therefore, the Association is entitled to the statutory offset. As the Association notes, one of the criteria necessary to establish a "covered claim" under the Act is that the property and casualty insurer became insolvent after the effective date of the Act. Prior to an order of liquidation and finding of insolvency, the Association has no obligation or ability to make payment on any claim asserted against an insolvent carrier's insured. Therefore, it is the date of insolvency and not the date of the injury which controls the determination of which Guaranty Association statute applies.

There is also no merit to the contention that application of the current Act constitutes an impermissible retroactive application of legislation. Application of the Guaranty Association Act does not impair the substantive right of the Fetters to collect medical expenses and wage losses in their action against Dr. DeVita.[11] The

rately for each account such amounts as are necessary for the purpose of paying the obligations of the association under section 1803(b)(1)(i) [association shall be obligated to pay covered claims] and the expenses of handling covered claims of the insolvent insurer....

40 P.S. § 991.1808(a). The Association further notes that it could not assess its member insurers for the purpose of paying PIC claims until after January 21, 1998, the date of PIC's liquidation order.

10. In support of its position, the Association cites two recent Commonwealth appellate cases, namely *Cullen v. Pennsylvania Property and Casualty Insurance Guaranty Association,* 760 A.2d 1198 (Pa.Cmwlth.2000) and *Panea v. Isdaner,* 773 A.2d 782 (Pa.Super.2001). In *Cullen,* this court held that when the Association takes its Section 1817(a) offset/credit, the workers' compensation carrier is precluded from asserting a subrogation lien against a recovery paid by the Guaranty Association. To do otherwise this court observed, would subject a claimant to a double offset and would give the employer greater rights than those of the employee, which is contrary to the equitable principles underlying the right

of subrogation. 760 A.2d at 1200–01. In *Cullen,* however, this court was not faced with the argument presented in the instant case, that is that application of the Act to a cause of action which accrued prior to its effective date abridges both the plaintiff's and the workers' compensation carrier's substantive rights.

In *Panea,* the Superior Court held that for purposes of applying the Guaranty Association Act, the date the harm is sustained is not determinative. Rather, as provided in the Act, the Act only applies if the order of liquidation and finding of insolvency occurs after the effective date of the Act. 773 A.2d at 788–89.

11. In comparison, former Sections 1720 and 1722 of the Financial Responsibility Law, 75 Pa.C.S. §§ 1720 and 1722, precluded both the right of subrogation and the recovery of benefits paid in conjunction with a workers' compensation claim. Section 1720 provided, "in actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits...." In conjunction

Fetters may still plead and prove and obtain a judgment for the full amount of damages, including medical expenses and wage losses, sustained as a result of DeVita's alleged negligence.[12] Nor does the Act limit the Fetters' right to file a claim with PIC's statutory receiver. Rather, the Act limits the right of the Fetters to *collect* on any judgment (or to seek settlement) from an additional source, the Guaranty Association.[13] However, as noted above, when Joan was injured, no right to collect damages from the former Pennsylvania Insurance Guaranty Association had yet accrued.

For the same reasons, the Guaranty Association Act does not unlawfully impair a workers' compensation carrier's right to subrogation. Section 319 provides a right to subrogation only in a recovery actually obtained by the claimant. *Mrkich v. Workmen's Comp. Appeal Bd. (Allegheny County Children & Youth Serv.)*, 801 A.2d 668 (Pa.Cmwlth.2002). Where the claimant is unable to collect because of the Guaranty Association Act's offset provision, there is no recovery in which to assert subrogation. However, it should be noted that the Act does not preclude subrogation against a recovery for wages and medical expenses if one is obtained from another source, such as the PIC's statutory receiver.

Accordingly, summary judgment is granted in favor of the Guarantee Association, and against Fetters and EBI.

### ORDER

AND NOW, this 26th day of July, 2002, summary judgment is GRANTED in favor of Guaranty Association and against Fetters and EBI in accordance with the foregoing opinion.

---

therewith, Section 1722 provided that in an action arising out of the maintenance or use of a motor vehicle, a plaintiff was precluded from pleading, introducing into evidence, or recovering the amount of benefits paid pursuant to workers' compensation. In 1993, the legislature repealed both sections insofar as those provisions related to workers' compensation benefits. *See* Section 25(b) of the Act of July 2, 1993, P.L. 190.

12. The Superior Court in *Panea* held that the Guaranty Association Act precludes a claimant from seeking to collect the amount of any offset from the tortfeasor personally. 773 A.2d at 791. *This court has not addressed the issue, and we need not decide it here.* Nonetheless, in *Bethea v. Forbes*, 519 Pa. 422, 426, 548 A.2d 1215, 1217 (1988), the Pennsylvania Supreme Court held that while the plaintiffs' failure to "exhaust" their rights under an applicable uninsured motorist policy precluded pursuing a claim under the former Penn-

sylvania Insurance Guaranty Association Act, that did not bar the plaintiffs from continuing with a tort action against the alleged tortfeasor.

13. In *Schreffler v. Pennsylvania Insurance Guaranty Association*, 402 Pa.Super. 309, 586 A.2d 983, 985 (1991), the Superior Court observed that:

the [former] Act does not intend to place a claimant in all cases in the same position she would have been had the insurance company remained solvent. The Act creates a means by which limited recovery may be had in instances where none would have been possible due to the insolvency. The same can be said of the current Act. Moreover, this court noted in *Cullen* that while the Act allocates the risk of loss to solvent insurance companies rather than the Guaranty Association, it does not alter the rights of the individual who has sustained the loss. 760 A.2d at 1202.