# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerome Marshall,                                    :
                            Petitioner              :
                                                    :
            v.                                      :       No. 541 C.D. 2018
                                                    :       Argued: March 14, 2019
Workers' Compensation Appeal                        :
Board (Easton Coach Company and                     :
Hartford Fire Insurance Company),                   :
                            Respondents             :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                          FILED: April 5, 2019


Jerome Marshall (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) approving the calculations set forth by Easton Coach Company and its insurer, Hartford Fire Insurance Company, (together, Employer) in a Third-Party Settlement Agreement (Employer's TPSA) and granting Employer's Modification Petition based on those calculations. Claimant argues it was error to rely on Employer's calculations because they included $153,982.45 from the settlement of his uninsured/underinsured motorist (UIM) claim that he asserts had been set aside exclusively to fund a Medicare Set-Aside Arrangement (MSA) on his behalf and, therefore, was not subject to

subrogation under Section 319 of the Workers' Compensation Act (Act), 77 P.S. § 671.[1]   The MSA that Claimant asserts was established was created in contemplation of the settlement of his WC claim with Employer, as well as the settlement of the UIM claim.  But, because there was no settlement of the WC claim, Employer remains primarily liable for medical treatment related to Claimant's work injury.  Therefore, the MSA, which was never completely funded, was not necessary to protect Medicare's interest here.  The Board, therefore, did not err in finding that the challenged amounts should be included in the Third-Party Recovery, and so remained subject to subrogation.  However, subsequent to the Board's Order, the Supreme Court decided *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947, 949 (Pa. 2018), which determined that employers cannot take a credit against a claimant's medical benefits.  We therefore vacate in part and remand for a determination of whether any recalculation is necessary.

## I.  Background
### A.    Facts

The facts in this matter are not disputed.  Claimant, a bus driver, sustained numerous injuries to his lumbar and cervical spine[2] in a September 16, 2005 motor vehicle accident that occurred while driving Employer's bus.  (WCJ Decision, Findings of Fact (FOF) ¶¶ 1-3.)  He has not returned to work due to those injuries, for which he continues to receive medical treatment.  When Claimant began receiving Social Security Old Age Benefits, Employer offset his workers'

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.
[2] The accepted injuries were "[c]ervical sprain and disc herniation injuries" and "C5-6 herniation and L4-5 disc protrusion."  (WCJ Decision, Findings of Fact ¶¶ 2-3.)

2

compensation (WC) wage loss benefits by his Old Age Benefits, thereby reducing his weekly benefit amount from $324.00 to $69.11. (*Id.* ¶ 23.)

Claimant filed a third-party action against the driver of the vehicle that struck the bus, which resulted in a settlement of $35,000. (*Id.* ¶ 5.) Claimant also filed an UIM claim against Employer's UIM carrier, for which he recovered $1.3 million in a July 23, 2015 settlement agreement (UIM settlement agreement). Of that amount, 33 1/3 percent, or $413,333.33, was paid to Claimant's wife for loss of consortium. This left $886,666.67 in UIM settlement proceeds payable to Claimant, which the parties do not dispute are subject to subrogation under Section 319. In addition to these proceeds, Claimant received from the UIM carrier "$30,788.45 as seed money and $123,194.00 in the funding of an annuity to fund Claimant's portion of a proposed . . . MSA."[3] (*Id.* ¶ 6.) It is this $153,982.45 (the Disputed Amount) that is at issue in this appeal.

---

[3] The UIM settlement agreement provided, relevantly, that the UIM carrier would pay

> THIRTY THOUSAND SEVEN HUNDRED EIGHTY EIGHT DOLLARS AND FORTY FIVE CENTS [$30,788.45] TO A MEDICARE S[]ET-ASIDE ARRANGEMENT ("MSA") THAT WILL BE ESTABLISHED ON BEHALF OF JEROME MARSHALL AND [TWELVE] (12) YEARLY PAYMENTS OF THIRTEEN THOUSAND NINE HUNDRED NINETY-FOUR DOLLARS AND SEVENTY FIVE CENTS ($13,994.75) EACH (totaling $167,937.00) ("Subsequent Payments") TO BE PAID TO THE MSA as further outlined within the Addendum A below . . . payable to Jerome Marshall in trust to be in compliance with the Medicare Secondary Payer reimbursement rules and regulations . . . .

(Reproduced Record (R.R.) at 68a (emphasis omitted, first alteration in the original).) Addendum A sets forth the terms of the 12 yearly payments of $13,994.75 to Claimant from Pacific Life Insurance Company based on the annuity the UIM carrier purchased. (*Id.* at 73a-74a.)

3

During settlement discussions, inquiries were made about what amount would be necessary to fund an MSA for Claimant's future medical needs. On June 24, 2013, the Center for Medicare and Medicaid Services (CMS) issued a letter on a requested MSA application filed by Employer in anticipation of a potential settlement of Claimant's WC claim. (Reproduced Record (R.R.) at 116a-18a.) In that letter, CMS stated that any MSA for Claimant had to be funded in the amount of $335,874.00. (FOF ¶ 8.) If the MSA was to be funded by an annuity, CMS indicated that to reach the required amount, the seed money for the annuity had to be $68,377.00 and the annuity had to pay $19,106.00 for 14 years. (*Id.*) The CMS letter further indicated that "[a]pproval of this []MSA **is not effective until** a copy of the **final executed workers' compensation Settlement Agreement**, **which must include this approved []MSA amount** is received by CMS . . . ." (*Id.* ¶ 9 (emphasis added); R.R. at 117a.)

Following CMS's letter, Claimant requested review of the proposed MSA by Garretson Resolution Group (GRG). On July 1, 2015, GRG responded that it evaluated the need for an MSA based on the facts presented and concluded that an MSA was needed based on CMS's guidelines, Claimant's injuries, the damages, and the gross award. (FOF ¶ 12.) As part of its analysis, GRG stated that it understood that: Claimant's "WC carrier has paid for injury-related care expenditures prior to the date of Settlement"; the proposed "**MSA is expected to pay** for injury-related care **going forward of the date of Settlement**"; and "the parties **have resolved <u>both the WC</u> and [t]hird-[p]arty liability components**." (*Id.* ¶¶ 13-14 (emphasis added); R.R. at 104a-07a.) GRG explained that, in order to fund the MSA in accordance with CMS's requirements based on the settlements

of **both** the WC and third-party claims, the third-party settlement was to pay for 55 percent of the MSA, or $184,730.70, and Claimant's WC carrier was responsible for funding 45 percent, or $151,143.30. (FOF ¶ 16.) However, both parties agree there has been **no settlement** of Claimant's WC claim. After receiving GRG's analysis, Claimant obtained a quote for an annuity in which the UIM carrier would pay Pacific Life Insurance Company (Pacific Life) $123,194.00 for an annuity that would pay $13,994.75 for 12 years, for a total payment of $167,937.00. (*Id.* ¶ 17.) The UIM carrier issued a check to Pacific Life for $123,194.00 to purchase the annuity. (*Id.* ¶ 18.)

Following the settlement of the UIM claim, Employer requested that Claimant execute a TPSA, setting forth the information necessary to calculate Employer's subrogation interest. Claimant did so (Claimant's TPSA), setting forth the following: Total Third-Party Recovery - $881,857.98; Accrued WC Lien - $504,609.77; Expenses of Recovery - $451,844.44; and Balance of Recovery - $377,248.21. (R.R. at 140a.) Based on those numbers, Claimant's TPSA provided that Employer was liable for 51.24 percent of Claimant's future benefits until the Balance of Recovery was exhausted. (*Id.*) Employer did not execute Claimant's TPSA. Instead, Employer filed the Modification Petition asserting the parties were unable to agree as to the terms of a TPSA.

### B.    *The WCJ's Decision*

The Modification Petition was assigned to a WCJ for disposition. Multiple hearings were held, at which argument, but no sworn testimony, was presented. Claimant presented documentary evidence, including Claimant's TPSA, the CMS letter, GRG's analysis, and the quote for the annuity purchased by the UIM carrier.

Employer submitted Employer's TPSA, which included the Disputed Amount for a total Third-Party Recovery of $1,035,840.40, a Balance of Recovery of $531,230.63, and a Reimbursement Rate of 43.62 percent. (*Id.* at 75a-76a.) Employer also presented copies of checks and the settlement agreements. Both parties submitted proposed findings of fact and briefs in support of their respective positions.

The WCJ determined that the only dispute was a legal one, whether the Disputed Amount should be included in the total of the Third-Party Recovery, and thus, subject to subrogation, or excluded therefrom "because it was deposited in a separate interest bearing account by . . . Claimant after the Third[-]Party Settlement." (FOF ¶ 28.) The WCJ found that it should be included, addressing, and rejecting, Claimant's arguments to the contrary. The WCJ first found that a "valid" MSA had not been created. The WCJ observed that the CMS letter and GRG analysis expressly stated that the proposed MSA was "prepared in contemplation of resolving **both** the [t]hird[-p]arty claim and the [WC] claim" and that the proposed MSA had to be funded by both Claimant (via the Third-Party Settlement) and Employer. (*Id.* ¶ 32 (emphasis added).) Because the WC settlement never occurred, the WCJ reasoned that the proposed MSA was not approved, and never came to fruition because such settlement was required before the MSA became valid. (*Id.*) Next, the WCJ held that because no WC settlement occurred, Employer, not Medicare, remained ultimately liable to pay for the medical treatment for Claimant's work injury, subject to Claimant's paying a portion of his medical treatment during the "grace period" created by the Third-

6

Party Settlement,[4] and there was no preemption issue. (*Id.* ¶¶ 34, 36-37.) The WCJ found that the principles of equity do not apply to Section 319 liens. (*Id.* ¶¶ 33-35.) Moreover, the WCJ pointed out that adding these funds in the total Third-Party Recovery places Claimant in the same position as all other claimants who settle a third-party claim and have to pay for a portion of his or her own benefits during the employer's "grace period." (*Id.* ¶ 35.) The WCJ noted that Employer's calculation was not unjust because it was not seeking the entire value of the annuity, only the annuity's purchase price, and Claimant would realize the difference between those amounts. (*Id.* ¶ 33.) Finally, the WCJ held that *Cullen v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 760 A.2d 1198 (Pa. Cmwlth. 2000), was distinguishable as it involved a situation where the employer was statutorily barred from subrogating settlement funds received by a claimant from the Pennsylvania Property and Casualty Insurance Guaranty Association (Guaranty Association). (FOF ¶ 38.)

The WCJ therefore determined that Employer met its burden of proof on the Modification Petition, concluding no valid MSA was established because no WC settlement had occurred and no such agreement was sent to CMS finalizing the creation of the MSA referenced in the CMS letter. (WCJ Decision, Conclusion of Law (COL) ¶ 2.) The WCJ held that Employer "has, at all times, remained responsible for the payment of reasonable, necessary and causally related medical expenses in relation to the Claimant's accepted work . . . injury . . . ." (*Id.* ¶ 3.) Thus, the WCJ approved Employer's TPSA and found that Employer would be

---

[4] Pursuant to Section 319, any third-party recovery that exceeds an employer's accrued lien is treated "as an advance payment of the employer's future compensation obligation, thereby providing the employer with a 'grace period' from making compensation payments." *Suburban Delivery v. Workers' Comp. Appeal Bd. (Fitzgerald)*, 858 A.2d 219, 223 (Pa. Cmwlth. 2004).

7

liable for 43.62 percent of Claimant's future indemnity and medical benefits until the Balance of Recovery, $531,230.63, is exhausted. (*Id.* ¶ 4.) The WCJ reduced Claimant's weekly benefit to $30.15 per week and indicated that Claimant would be responsible to pay 56.38 percent of his future medical expenses. (*Id.* ¶¶ 5-6.) Finally, the WCJ concluded:

> [t]he seed money and annuity payments being paid by Pacific Life may be utilized by Claimant in any manner he sees fit, as Medicare's interests remain protected by the [Employer's] ultimate liability to pay Claimant's reasonable, necessary and causally related medical expenses until such time as those benefits are terminated or resolved by the funding of a valid MSA submitted to and approved by CMS.

(*Id.* ¶ 8.)

## C.    The Board's Opinion

Claimant appealed to the Board, challenging the WCJ's determinations. The Board affirmed, "find[ing] no error in the WCJ's reasoning and . . . [the WCJ] properly included the MSA funds in the overall amount that [Employer] was entitled to with its subrogation lien." (Board Opinion (Op.) at 6.) The Board agreed that because no formal settlement of Claimant's WC claim was executed, no MSA was formally created per the CMS letter. As no MSA was created, the Board held that the challenged funds remained a part of Claimant's total Third-Party Settlement of which Employer had an absolute right to subrogate under Section 319. (*Id.* (citing *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.)*, 781 A.2d 1146, 1151 (Pa. 2001)).) Claimant now petitions this Court for review.

8

## II. Claimant's Appeal to this Court
### A. *Claimant's Arguments*

On appeal,[5] Claimant reiterates the arguments he made before the WCJ, which he asserts the WCJ and Board erred in rejecting.[6] Claimant argues the Disputed Amount was used to establish a valid MSA under federal law that was intended to protect Medicare's interests by providing Claimant with funds to pay the future medical bills associated with his ongoing work injury. Claimant contends there is no requirement for his WC claim to have settled or for CMS to have approved the MSA for the MSA to be valid. Because a valid MSA was established, Claimant maintains including these funds in the total Third-Party Recovery and allowing their subrogation under Section 319 is unjust, unfair, and contrary to the humanitarian purpose of the Act and federal law, which preempts state law subrogation under these circumstances.

Further, according to Claimant, he needed the MSA in order to settle his UIM claim and, because Employer's WC carrier refused to fund the MSA, the UIM carrier agreed to do so. The WCJ's conclusion that Claimant was free to use that money as he wishes conflicts with the terms of the UIM settlement agreement. And, by approving subrogation of these funds, Claimant argues the WCJ gave Employer the full benefit not only of the Third-Party Settlement proceeds, but also the MSA, and by doing so, relieved Employer from paying for a substantial

---

[5] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

[6] Claimant raises eight separate issues in his brief to this Court; however, his arguments on many of these issues overlap significantly. Accordingly, we have consolidated them into those discussed herein.

9

amount of Claimant's future indemnity benefits and medical expenses related to his work injuries. Claimant also maintains the WCJ erred in including the Disputed Amount as a lump sum since Claimant would not receive the full benefit of the annuity for 12 years, which is manifestly unfair and prejudicial because it treats Employer more favorably than Claimant.

Finally, Claimant asserts the rationale for subrogation under the Act and the prohibition against allowing employers to take a double offset through subrogation support his appeal. Citing *Dale Manufacturing Company v. Bressi*, 421 A.2d 653, 654 (Pa. 1980), Claimant argues that excluding the Disputed Amount from subrogation: does not allow him to receive a double recovery; Employer is not being compelled to pay WC benefits due to the negligence of a third party because the MSA relieves Employer of its liability to pay for Claimant's future medical bills for that injury; and the third party, the UIM carrier, is not escaping liability for the negligence because it is that party that funded the MSA. Claimant also argues, citing *Cullen*, that subrogation cannot be used by an employer to obtain a double offset, as doing so contradicts the Act's humanitarian purpose. Under the WCJ's erroneous interpretation of *Cullen*, Claimant contends, Employer benefits from the MSA, "since the total amount of the third[]party settlement agreement is increased, . . . [its] portion of the lien reimbursement [is] greater . . . ." (Claimant's Brief (Br.) at 44.) Claimant argues that Employer also benefits because it now is "only liable to pay substantially lower percentages of every future indemnity benefit and every future medical benefit." (*Id.* at 45.)

### B.    *Employer's Arguments*

10

Employer argues its entitlement to subrogate Claimant's recoveries from the third-party suit (against the driver) and the UIM claim is absolute under Section 319, and not subject to exceptions, equitable or otherwise. (Employer's Br. at 6 (citing *Thompson*, 781 A.2d at 1151).) According to Employer, Claimant's arguments that a valid MSA was established are incorrect. Because this matter involves a WC claim that has not been settled, Employer asserts it remains obligated to pay for the medical treatment that is reasonable, necessary, and causally related to Claimant's work injury. This means, Employer argues, that no liability shifted to Medicare and, therefore, no MSA was needed to protect Medicare's interests because those interests are protected by the ongoing medical coverage Employer provides to Claimant. With no need for an MSA, Employer contends the funds purportedly designated to create an MSA should be treated "merely [as] deposits of funds which can be freely used by Claimant for any purpose . . . ," which are subject to subrogation under Section 319. (*Id.* at 8-9.) As for the particular arguments Claimant reiterates on appeal, Employer adopts the WCJ's analysis rejecting each of those arguments as its own. (*Id.* at 9-16 (quoting FOF ¶¶ 32-38).)

### C. Discussion

When considering issues of subrogation, we are guided by the statutory language of Section 319 and the mandatory nature of subrogation reflected by that language. In relevant part, Section 319 provides:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in

11

effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671. Our Supreme Court has explained that this language "is clear and unambiguous" and "written in mandatory terms" that "admit[] no express exceptions, equitable or otherwise." *Thompson*, 781 A.2d at 1151. Those terms do "more than confer a 'right' of subrogation upon the employer; rather, subrogation is automatic." *Id.* The purpose of Section 319 is threefold and is intended to: prevent a claimant from receiving a double recovery for the same injury; ensure that an employer is not required to make compensation payments due to the negligence of a third party; and prevent the third party from escaping liability for his or her negligence. *Poole v. Workers' Comp. Appeal Bd. (Warehouse Club, Inc.)*, 810 A.2d 1182, 1184 (Pa. 2002) (citing *Dale Mfg. Co.*, 421 A.2d at 654). When determining whether those funds are subject to subrogation under Section 319, the manner in which the parties to a third-party settlement characterize the settlement funds is not conclusive. *Serrano v. Workers' Comp. Appeal Bd. (Ametek, Inc.)*, 154 A.3d 445, 451 n.10 (Pa. Cmwlth. 2017) ("[A] claimant is not entitled to craft a third-party settlement award in a manner that limits an employer's subrogation rights."); *Bumbarger v. Bumbarger*, 155 A.2d 216, 218-19 (Pa. Super. 1959) (employee and third party cannot interfere with an employer's right to subrogation by designating part of the recovery as damages for pain and suffering).

12

### 1. *Whitmoyer*

After briefing, the Supreme Court decided *Whitmoyer*, which held that "when a [claimant] recovers proceeds from a third-party settlement . . . the employer . . . is limited to drawing down against that recovery **only to the extent that future disability benefits [(and not medical expenses)] are payable to the claimant**." *Whitmoyer*, 186 A.3d at 949 (emphasis added). In other words, an employer cannot take a credit against ongoing medical benefits. The WCJ's Decision here, affirmed by the Board, neither of which had the benefit of the Supreme Court's decision, allowed Employer to take a credit against Claimant's ongoing medical benefits. We, therefore, by order, directed the parties to address the impact of *Whitmoyer* on this case. As recognized by Employer at oral argument, only indemnity benefits are now correctly subrogable, and Employer remains liable for Claimant's future reasonable and necessary medical treatment. We will therefore consider Claimant's and Employer's arguments with regard to whether the MSA removed the Disputed Amount from the Third-Party Settlement and Employer's right to subrogation with *Whitmoyer* in mind. We will also vacate the Board's Order affirming the WCJ's Decision with regard to the subrogation calculations, and remand the matter for a determination of whether any recalculation is necessary.

### 2. Subrogation of the challenged amounts

Claimant's arguments regarding why Employer cannot subrogate the Disputed Amount are based on his contentions that a valid MSA was created to protect Medicare's interests, and that the monies contained therein are available

13

only for Claimant to use for the future medical treatment of his work injury. However, after reviewing the purpose of MSAs, as well as the settled legal principles regarding an employer's ongoing liability for a work injury absent settlement of the WC claim, we discern no error in the WCJ's conclusions.

In WC cases, Medicare payment is secondary to the employer's payment of a claimant's future medical expenses. 42 U.S.C. § 1395y(b)(2)(A)(ii) (Medicare is "secondary payer;" "[p]ayment [by Medicare] may not be made . . . with respect to any item or service to the extent that -- . . . (ii) payment has been made or can reasonably be expected to made under a [WC] law or plan . . . ."); *see Miller v. Workers' Comp. Appeal Bd. (Electrolux)*, 940 A.2d 603, 608 (Pa. Cmwlth. 2008); *Weinstein v. Sebelius*, No. 12-154, 2013 WL 1187052, at *3 (E.D. Pa. Feb. 13, 2013) ("the Medicare Secondary Payer statute" "makes Medicare a 'secondary' source of payment for health care services"). It is not until there is a settlement in which the employer is **released** from paying future medical benefits that the parties are required, or need, to protect Medicare's interests in remaining the secondary payer. *Id.* When Medicare does need to be protected, the recommended method is an MSA, "a financial agreement that allocates a portion of **a [WC] settlement** to pay for future medical services related to the work injury, illness, or disease." *Sheaffer v. Workers' Comp. Appeal Bd. (Standard Steel, LLC)* (Pa. Cmwlth., No. 783 C.D. 2016, filed Feb. 14, 2017), slip op. at 2 n.2[7] (citations omitted) (emphasis added).[8] When there is no WC settlement there is no need to submit a WC MSA.

---

[7] *Sheaffer*, an unreported opinion, is cited for its persuasive authority in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[8] *See also* Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide Version, 2.9, available at https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-Aside-Arrangements/Downloads/ **(Footnote continued on next page…)**

Claimant argues that his receipt of the CMS letter and GRG's analysis supports that, even without a settlement of his WC claim, he still had a valid MSA. However, those documents do not do so because their analyses were predicated on the assumptions that: (1) Claimant's WC claim was being settled; and (2) the MSA would be funded in the amount projected to cover Claimant's future work-related medical expenses, $335,874.00, thereby protecting Medicare's interests in remaining the secondary payer. (R.R. at 102a-07a,[9] 116a-17a.[10]) Because the WC claim never settled and Employer never paid the amount anticipated to be its contribution to the MSA, resulting in the asserted MSA never being fully funded, Claimant's reliance on these documents is misplaced.

Claimant also argues that subrogating the Disputed Amount is erroneous because, following the Third-Party Settlement, Employer is no longer liable for his medical treatment and, therefore, an MSA was required to protect Medicare's interests. However, this is not the case. It is well settled WC law that once an employer becomes liable for a work injury, it remains so "in the absence of a final receipt, an agreement, a supersedeas[,] or any other order of the WCJ" ending that liability. *McLaughlin v. Workers' Comp. Appeal Bd. (St. Francis Country House)*, 808 A.2d 285, 288 (Pa. Cmwlth. 2002). There has been no settlement of

_____

**(continued…)**

WCMSA-Reference-Guide-Version-2_9.pdf (describing the purpose and manner in which MSAs should be established and administered) (last visited April 3, 2019).

[9] GRG's analysis referenced the settlement of both claims and provided that both Employer (through a WC settlement) and Claimant (through the UIM Settlement) would fund the MSA in the amount of $335,874.00.

[10] CMS's letter explained that any MSA created had to be funded $335,874.00 and "[a]pproval of this []MSA [was] not effective until a copy of the final executed [WC] settlement agreement, which must include th[e] approved . . . amount, [was] received by CMS." (R.R. at 116a-17a.)

15

Claimant's WC claim and, thus, Employer has not been relieved of its liability for Claimant's WC injury. Because Claimant's WC claim remains open and Employer remains **primarily** liable for the medical treatment related to Claimant's work injury, *Miller*, 940 A.2d at 608, Medicare's interests are adequately protected without the need for an MSA.[11] Moreover, the way the parties to a third-party action fashion the settlement is not determinative to whether the settlement is subject to subrogation. *Serrano*, 154 A.3d at 451 n.10; *Bumbarger*, 155 A.2d at 218-19. Thus, the fact the UIM settlement agreement designates those monies as funding an MSA to pay for Claimant's future medical treatment does not remove those funds from the Third-Party Settlement amount available for Employer's subrogation, in the absence of a valid MSA and WC Settlement.

We recognize Claimant contends the WCJ erred in finding that the Disputed Amount did not have to be used to pay Claimant's medical treatment. However, we believe that the Board and WCJ did not err.

Claimant next asserts the WCJ erred by including the Disputed Amount, as a lump sum, in the total Third-Party Recovery. However, where a third-party settlement results in an annuity, it is the cost, or present value, of the annuity that is subject to subrogation under Section 319. *Suburban Delivery v. Workers' Comp. Appeal Bd. (Fitzgerald)*, 858 A.2d 219, 226-27 (Pa. Cmwlth. 2004); *A.C. & S. v. Workmen's Comp. Appeal Bd. (Dubil)*, 616 A.2d 1085, 1087-88 (Pa. Cmwlth. 1992). Here, the WCJ included the cost of the annuity, $123,194.00, and the

---

[11] Because there is no need to protect Medicare's interests as required by federal law through the creation of an MSA, we will not address Claimant's contention that subrogation under Section 319 is preempted by federal law.

16

$30,788.45 seed money, totaling $153,982.45, in Claimant's total Third-Party Recovery. There was no error in the WCJ doing so.

Claimant finally argues that the Act's humanitarian purposes and *Cullen* require a different result because, as a result of subrogation, Employer receives a double offset and is relieved from its full liability to pay Claimant's WC benefits, which is unjust and inequitable. Claimant's arguments are premised on his view that the MSA remains valid, and that the Disputed Amount, which was designated for inclusion in the MSA, should therefore not be also subject to subrogation. However, there is no valid MSA and therefore the Disputed Amount cannot be removed from the Third-Party Settlement. Because there is no valid MSA, and no WC Settlement, there is no double offset, and Employer continues to be primarily liable for Claimant's medical benefits. Therefore, as the WCJ cogently explained in his opinion, the inclusion of the Disputed Amount in Claimant's total recovery is not unjust because it places Claimant in the same position as other claimants who settle third-party actions and whose receipt of WC benefits is reduced during the grace period created by the amount of the settlement that exceeded the accrued WC lien. (FOF ¶ 35); *see Suburban Delivery*, 858 A.2d at 223 (explaining that an employer receives a grace period from paying the full amount of a claimant's benefits where a third-party settlement exceeds the employer's accrued lien). *Cullen* is inapplicable because here, unlike in *Cullen*, the amounts that Claimant recovered from the Third-Party Settlement have not been reduced. As previously explained, while Claimant and the UIM carrier here designated certain funds from that settlement for an MSA, such designation is not dispositive in determining Employer's subrogation rights. *Serrano*, 154 A.3d at 451 n.10; *Bumbarger*, 155

17

A.2d at 218-19. Accordingly, there is no double offset that would be contrary to the humanitarian purpose of the Act.

### III.      Conclusion

For the foregoing reasons, the WCJ did not err in including the Disputed Amount in Claimant's Third-Party Recovery making those funds subject to Employer's subrogation under Section 319, and the Board's Order upholding that determination is affirmed.  However, to the extent the Board's Order affirmed the WCJ's Decision allowing Employer to take a credit against Claimant's ongoing medical benefits, the Order is vacated in part, and we remand for a determination of whether any recalculation is necessary.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerome Marshall,                          :
                    Petitioner            :
                                          :
          v.                              :    No. 541 C.D. 2018
                                          :
Workers' Compensation Appeal              :
Board (Easton Coach Company and           :
Hartford Fire Insurance Company),         :
                    Respondents           :

# O R D E R

NOW, April 5, 2019, the Order of the Workers' Compensation Appeal Board (Board), entered in the above-captioned matter, is **AFFIRMED** to the extent it affirmed the Workers' Compensation Judge's (WCJ) determination that the funds designated in a third-party settlement agreement to create a Medicare Set-Aside Arrangement for Jerome Marshall (Claimant) were subject to subrogation. The Order is **VACATED** to the extent it affirmed the WCJ's determination that Easton Coach Company and Hartford Fire Insurance Company could take a credit against Claimant's ongoing medical benefits, and we **REMAND** the matter to the Board to remand to the WCJ for a determination of whether any recalculation is necessary.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge