PMA INSURANCE GROUP and McClure Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (Anna M. KELLEY, Widow of Richard J. Kelley, Deceased), Respondent.

Commonwealth Court of Pennsylvania.

Argued May 8, 1995.

Decided Sept. 13, 1995.

Reargument Denied Oct. 26, 1995.

Christopher A. Hackman, for petitioners.

Joseph M. Melillo, for respondents.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The PMA Insurance Group and the McClure Company (collectively referred to as PMA) appeal an order of the Workmen's Compensation Appeal Board, which affirmed a referee's decision dismissing PMA's Petition for Review of a Notice of Compensation Payable.

Richard J. Kelley (Decedent), while in the employ of the McClure Company, was killed when he fell off a ladder into a bin of sand where he was asphyxiated. The accident occurred on the premises of the Pennsy Supply Inc., Harrisburg, Pennsylvania. Thereafter, PMA issued a notice of compensation payable, and began paying benefits to Decedent's widow, Anna Mae Kelley (Claimant), and Decedent's dependent children.

Claimant filed a complaint in the Court of Common Pleas of Dauphin County (trial court) against Pennsy, alleging that Decedent died as a result of Pennsy's negligence. PMA was also the insurance carrier for Pennsy Supply. During the trial in the aforementioned action, Claimant, PMA,[1] and Pennsy entered into a "high/low" settlement agreement. That agreement guaranteed Claimant a payment of $425,000, even if the jury determined that Decedent did not die as a result of Pennsy's negligence; on the other hand, if the jury found in favor of Claimant, she was entitled to a maximum of $875,000 in damages. At the conclusion of the trial, the jury found in favor of Pennsy, finding no negligence on its part.

Following the jury verdict, PMA filed a petition to intervene in the action against Pennsy, to assert a subrogation lien for compensation benefits paid. The subrogation right asserted in the petition was based on Section 319 of the Workers' Compensation Act (Act),[2] which provides:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. . . .

On July 25, 1991, the trial court denied PMA's petition because the jury had found that Pennsy, the third party, had not negligently caused Decedent's death. Hence, in the trial court's view, it was not proven that Decedent's death was caused by the act or omission of Pennsy, as required by Section 319 of the Act. Claimant was, thereafter, paid the $425,000 guaranteed by the settlement agreement.

On June 6, 1991, before the trial court denied the motion to intervene, PMA filed a

---

1. PMA was not a party in the negligence action when the agreement was reached, but was the insurance carrier on the risk.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

review petition with a referee, asserting that Claimant had refused to honor their subrogation interests pursuant to the settlement she received. No hearings were held by the referee in this matter, since the parties stipulated to the salient facts and presented the referee with a purely legal question. The parties' stipulation stated that the trial court had denied PMA's motion to intervene and a copy of the trial court's opinion and order was attached. On January 25, 1993, the referee denied PMA's review petition. The referee reasoned that PMA was, in essence, asking the referee to overrule the trial court's decision, and held that PMA was barred from pursuing the subrogation issue under the principles of collateral estoppel and res judicata. The referee also concluded, like the trial court, that the jury's finding that Pennsy had not negligently caused Decedent's death, did not permit PMA to invoke subrogation under Section 319 of the Act. PMA appealed to the Board, which affirmed the referee. This appeal followed.

PMA raises two issues for our review: (1) whether the referee erred in holding that collateral estoppel precluded PMA from litigating its subrogation claim in the workers' compensation system; and (2) whether the referee failed to recognize their subrogation rights under Section 319 of the Act.

 Res judicata is a concept designed to prevent the relitigation of claims and issues, and provides that a judgment in an action will have a binding effect in a later action. The term encompasses two related, but distinct principles both under the general term of issue preclusion: technical res judicata, and collateral estoppel. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines)* 142 Pa.Commonwealth Ct. 176, 597 A.2d 182 (1991), *reversed on other grounds,* 534 Pa. 327, 632 A.2d 1302 (1993); *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.),* 88 Pa.Commonwealth Ct. 76, 488 A.2d 1177 (1985). Generally, the principle of technical res judicata provides that when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded. *Hebden.* On the other hand, the principle of collateral estoppel acts to foreclose relitigation in a subsequent action of an issue of fact or law that was actually litigated and was necessary to a prior final judgment. *Id.*

 The principle of collateral estoppel, relevant in the instant case, operates to bar relitigation of a issue of law or fact in a subsequent action only when the following factors are demonstrated: (1) the legal or factual issues are identical; (2) they were actually litigated; (3) they were essential to the judgment; (4) and they were material to the adjudication. *Patel.* A prerequisite to the application of collateral estoppel is that the prior decision asserted to have a preclusive effect must be a final judgment. *Hebden.*

 PMA argues that the referee erred in holding that collateral estoppel applied in this matter, because the trial court order alleged to have a preclusive effect was not a final order. Specifically, the trial court order at issue was an order denying PMA's motion to intervene in Claimant's lawsuit against Pennsy to protect their right to subrogation. PMA asserts that the trial court's order was not a final order, but only interlocutory, and never conclusively precluded them from exercising their subrogation rights. Of course, the doctrine would not apply if the prior order was only interlocutory. *Popowsky v. Pennsylvania Public Utility Commission,* 166 Pa.Commonwealth Ct. 690, 647 A.2d 302 (1994).

 The trial court's order at issue here was filed in July of 1991. Under the Pa. Rules of Appellate Procedure in effect in 1991,[3] an order denying a petition to intervene was generally considered interlocutory. *Van Den Heuval v. Wallace,* 382 Pa.Superior Ct. 242, 555 A.2d 162 (1989). But, such an order was considered final if its practical effect was the denial of the relief sought and

---

**3.** In 1992, the Rules of Appellate Procedure were amended, and under the new rules, an order denying a party's motion to intervene in a case is not a final order. Pa.R.A.P. 341. Such an order is only appealable if it qualifies as a collateral order under Pa.R.A.P. 313 or permission to appeal the order is granted.

the relief could not be obtained in any other way. *Pennsylvania Association of Rural and Small Schools v. Casey,* 531 Pa. 439, 613 A.2d 1198 (1992).

■■■ While the trial court's order denied PMA the immediate opportunity to place a subrogation lien on the $425,000 Claimant recovered from Pennsy as a result of the high/low agreement, we must agree that it did not deprive PMA of all avenues of relief. A workers' compensation referee has the authority to order a claimant to make an out of pocket lump sum payment or modify a claimant's workers' compensation award to reflect third-party settlement. *Ward v. Workmen's Compensation Appeal Board (Sun Refining and Marketing Co.),* 143 Pa.Commonwealth 319, 599 A.2d 1013 (1991), *petition for allowance of appeal denied,* 532 Pa. 646, 614 A.2d 1143 (1992); *Cox v. Workmen's Compensation Appeal Board (Otis Elevator),* 150 Pa.Commonwealth Ct. 205, 615 A.2d 878 (1992), *petition for allowance of appeal denied,* 533 Pa. 663, 625 A.2d 1196 (1993). A referee may also give an employer or insurer a credit against future installments of compensation payable to a claimant, to the extent that the monies received by a claimant under a third party settlement exceeds the amount of compensation already paid. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board,* 506 Pa. 592, 487 A.2d 794 (1985). Hence, in light of alternative types of relief that PMA may seek before a workers' compensation referee, the trial court's order did not have the practical effect of preventing PMA from securing relief in any other way. The interlocutory order of the common pleas court prevented PMA from presenting its claim in that forum; it did not extinguish PMA's claim for subrogation. Accordingly, the trial court's order has no preclusive effect.

■■■ Moreover, even if the trial court's order was indeed final, collateral estoppel would, nevertheless, be inapplicable here. In the proceedings before the trial court, PMA was seeking to intervene into Claimant's lawsuit to assert a subrogation lien for compensation they had already paid to Claimant. With regard to the petition for review PMA filed with the referee, it sought a credit against future payments of Claimant's benefits, in addition to a recovery of past payments. Therefore, since the legal and factual issues raised before the trial court and the referee were not identical, collateral estoppel cannot apply.

We hold, therefore, that the referee and the Board erred in concluding that collateral estoppel precluded PMA from invoking its right to subrogation in this matter.

■■■ Next, PMA contends that it is entitled to subrogation rights against Claimant's $425,000 third party recovery under Section 319 of the Act. PMA argues that it is entitled to subrogation under Section 319, because the jury in Claimant's negligence suit found that Pennsy was not negligent and relies upon this Court's decision in *Heiser v. Workmen's Compensation Appeal Board (Westmoreland Casualty Co.),* 95 Pa.Commonwealth Ct. 350, 505 A.2d 1060 (1986), for its case precedent authority.

In *Heiser,* a claimant receiving total disability benefits filed a lawsuit against a third party responsible for his injuries. The suit was settled and the claimant received a $100,000 payment; the settlement agreement contained language disclaiming the tortfeasor's liability. The employer's insurer filed a subrogation claim with the referee, which was granted. The Board affirmed and the claimant's appeal to this Court followed. On appeal, the claimant argued that the insurer was not entitled to subrogation under Section 319 of the Act, since the settlement agreement contained the disclaimer of the alleged tort-feasor's liability, and the insurer, thus, failed to show that the claimant's injuries were caused by the act or omission of the third party. We disagreed with the claimant and affirmed the Board.

Quoting from a decision of the Court of Common Pleas of Philadelphia County that was affirmed by the Superior Court per curiam,[4] we explained in *Heiser* that:

---

4. *Trumbull v. Paris Linen & Decorating Shops, Inc.,* Court of Common Pleas of Philadelphia, Trial Division, (No. 437 July Term, 1973), *aff'd*

*per curiam,* 249 Pa.Superior Ct. 629, 377 A.2d 1004 (1977).

[T]he statutory scheme of Section 319 seeks to ensure that the employer ... compensate the injured employee without fault ..., but that this compensation not represent a double payment for the same injuries. For that reason, the employer who has the unyielding obligation to compensate the victim obtains a quid pro quo in the form of subrogation if the injury was *caused* by another and if compensation from such third person was obtained to the extent it was paid or payable. (Emphasis in original.)

*Id.* at 357, 505 A.2d at 1063. We held that the right to subrogation may be invoked against monies received by a claimant in a compromise settlement, because the settlement is, in itself, sufficient to sustain the causation requirement under Section 319. Proof of the tort-feasor's negligence is not required before a subrogation action may be maintained. Again, quoting from the common pleas court opinion:

It is clear from a textual analysis of the Act that Section 319 embraces the provision that an employer (or his insurance carrier) shall be subrogated to funds derived from a compromise settlement between the employee and a third party. The language of the Act explicitly refers to 'reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement' as proper objects of subrogation. The conclusion to be drawn from the reference to 'compromise settlement,' when read in the context of the Act as a whole, is two fold: The compromise settlement may be between the employee or the employer, or between the employee and the third party who caused the injury. This interpretation clearly obviates the necessity of a formal adjudication of the third party's negligence when the employer invokes a right of subrogation, *not* against the third party (or its indemnity carrier), but against the employee or the fund received by the employee from the alleged third party tortfeasor.... (Emphasis in original.)

*Id.* at 358, 505 A.2d at 1063–64. *Accord Hill v. Workmen's Compensation Appeal Board (J.F. Judski Associates),* 117 Pa.Commonwealth Ct. 540, 543 A.2d 1279 (1988), *petition for allowance of appeal denied,* 522 Pa. 615, 563 A.2d 500 (1989).

In the present case, Claimant received $425,000 in a compromise settlement with Pennsy, the third party in this matter. In light of the principle enunciated in *Heiser,* we must conclude that the causation requirement in Section 319 of the Act is satisfied by the compromise settlement executed by Claimant and Pennsy. The issue of Pennsy's negligence with regard to Decedent's death is not relevant to determining whether PMA is entitled to subrogation against the monies recovered by Claimant in the settlement. To hold otherwise would give Claimant a windfall by permitting her a double recovery for the death of Decedent, and would defeat the purpose of subrogation solely because Claimant received monies from a compromise settlement rather than a verdict. Hence, PMA is entitled to subrogation against the monies Claimant recovered from Pennsy under the high/low settlement agreement.

Claimant argues, however, that this case is distinguishable from *Heiser,* because a jury specifically found that Pennsy did not negligently cause Decedent's death. We must disagree. A review of the jury's verdict shows that the jury determined only that Pennsy was not negligent with regard to Decedent's death; in other words, it determined that Decedent's death was not the *fault* of Pennsy. Under Section 319, an employer asserting a right to subrogation against a fund created by a compromise settlement is not required to show that a third party who injured a claimant was at fault. A compromise settlement, even when the document contains express language that the tort-feasor is not liable for a claimant's injury, is sufficient to satisfy the criterion of Section 319 that an act or omission of a third party caused the claimant's injuries. *Heiser.*

Therefore, we hold that PMA is entitled to subrogation against the $425,000 received by Claimant in her settlement with Pennsy.

Accordingly, the order of the Board is reversed and this case is remanded to the Board to determine the amount of PMA's subrogation claim.

### ORDER

NOW, September 13, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed. This case is remanded to the Board for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.