IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Luke's Physician Group,           :
                                      :
                    Petitioner        :
                                      :
          v.                          : No. 955 C.D. 2022
                                      : Submitted: May 19, 2023
Sheila Kuzo (Workers' Compensation    :
Appeal Board),                        :
                                      :
                    Respondent        :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 29, 2024


          St. Luke's Physician Group (Employer) petitions for review of the
August 16, 2022 order of the Workers' Compensation (WC) Appeal Board (Board),
that affirmed the decision of the Workers' Compensation Judge (WCJ) granting the
penalty petition (Penalty Petition) filed by Sheila Kuzo (Claimant). After careful
review, we affirm.

          Claimant was employed as a critical care nurse at Miners Memorial
Hospital (now St. Luke's Miners Campus). Reproduced Record (R.R.) at 16a, 236a.
Claimant sustained a work-related injury on September 18, 1996, while lifting a
patient into bed in the course and scope of her employment. *Id.* at 16a. A notice of

compensation payable (NCP) was issued by Employer acknowledging a herniated disc at C6-7. *Id.* The NCP was amended on June 4, 2003, to include "swallowing/esophagus problems" as well as a diagnosis of "major depression." *Id.* at 13a. Both parties agreed to these amendments. *Id.* at 6a. The NCP was amended again on June 24, 2008, to include a diagnosis of "sleep disorder." *Id.* at 18a.

On February 10, 2021, Claimant filed the Penalty Petition alleging that Employer violated the Workers' Compensation Act (Act)[1] by failing to make timely payment of Claimant's reasonable, necessary, and causally-related medical expenses. R.R. at 31a. The unpaid expenses in question are prescriptions for four medications: Lamotrigine, Cymbalta/Duloxetine, Lexapro, and Hydroxyzine. *Id.* at 277a-78a. The WCJ conducted hearings and heard testimony from Claimant and Dr. Kenneth Zemanek, who is board certified in psychiatry and neurology, and the doctor who prescribed the disputed medications. Lisa Llewellyn, the collections manager for Alliance Medication Services, also testified for Claimant on the billing for the medications and the amount of unpaid expenses.[2]

At a hearing on April 29, 2021, Claimant testified on her own behalf in support of the Penalty Petition, where she described her work injury and medical history. R.R. at 58a-78a. In addition to her family doctor and her pain management doctor, Claimant treated with Dr. Zemanek roughly every 3-6 months for her psychiatric issues. *Id.* Claimant testified that Dr. Zemanek managed her medication and talked to her about how she feels and any issues she has. *Id.* On cross-examination, Claimant stated that she had no prior mental health treatment before

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

[2] Llewelyn verified billing documentation and testified that the outstanding payments for the medications prescribed by Dr. Zemanek totaled $39,904.03. R.R. at 284a. Neither the authenticity of the documents nor her testimony is disputed by Employer on appeal.

her work injury. *Id.* Claimant also answered questions regarding other health issues and potential sources of stress from her childhood and relationships with family members. *Id.* She testified that her parents had an abusive relationship and alcohol dependency, she had to care for her siblings at age 11 or 12, she had a younger sister who was in a serious car accident and later died of melanoma, and her son and daughter-in-law struggled with substance abuse issues. *Id.* She also testified to other health issues beyond her work injury, including neuropathy in her hands and feet, blood clotting, and lower back pain that required surgery. *Id.*

The WCJ found Claimant's testimony regarding her current symptoms, side effects from medication (specifically from Lexapro), and treatment with Dr. Zemanek to be generally credible. R.R. at 283a. The WCJ found Claimant's testimony to be largely uncontradicted and found her answers to questions about other health issues and potential stressors in addition to her work injury were "generally consistent with Dr. Zemanek's understanding of those other stressors." *Id.*

At a deposition on May 20, 2021, Dr. Zemanek testified as to his treatment of Claimant's work injury. R.R. at 81a-130a. Dr. Zemanek testified that he began consistently treating Claimant starting May 16, 2018. *Id.* at 276a. Claimant was first seen for anxiety and depression and suffered several days of impulsiveness and racing thoughts. *Id.* Claimant was already taking Cymbalta and Lexapro, as well as Lyrica, before May 2018. *Id.* As noted by the WCJ,

> Dr. Zemanek diagnosed Bipolar II, major depressive type with seasonal affective component due to chronic pain, difficulty functioning **and depression** due to the work injury of September 18, 1996. Dr. Zemanek noted all the steroids she was prescribed in the past could have caused her mood to shift as well and should be considered. Dr. Zemanek was asked about the injury description of major

3

depression and his diagnosis of Bipolar II major depressive type and how the two work together. Dr. Zemanek replied, "well, major depressive disorder is one aspect of the mood syndrome and hypomanic is above the normal mood, but not severely above a normal mood to be a mania, but higher than a general good mood." Dr. Zemanek was asked about the four medications he prescribed. The Lamotrigine is an anti-seizure medication but good for stabilizing mood in a depressive state and was prescribed for her depressive state. The Cymbalta/Duloxetine is related to [t]his diagnosis and is a good anti-depressant and useful for nerve pain. The Lexapro is also an anti-depressant used to help for the same reasons as Cymbalta. Finally, the Hydroxyzine is related to the work injury and used to deal with the anxiety. Dr. Zemanek was asked if a difference exists between major depression and major depressive disorder. Dr. Zemanek stated that major depression is feelings of depression and major depressive disorder is a couple of week period of depression with loss of interest, loss of sleep, guilty feelings, change in appetite, no energy, agitation, helplessness, and hopelessness.

R.R. at 277a-78a (emphasis added).

On cross-examination, Dr. Zemanek answered questions about his understanding of Claimant's background and other potential sources of stress beyond the work injury. R.R. at 278a. He agreed with Employer's counsel that individuals with adverse childhood experiences may be prone to certain ailments, including depression. *Id.* He further testified that although he was aware Claimant's parents were alcoholics and there was emotional abuse present, he was not sure if her parents were also physically abusive. *Id.* Dr. Zemanek was unaware that Claimant took care of her siblings when she was a child, but he was aware of other family matters related to Claimant's siblings and husband. *Id.* Dr. Zemanek testified that he was also aware of Claimant's health issues beyond her work injury, including pulmonary emboli, rhizotomy, bone fusion, carpal tunnel syndrome, gastric bypass,

4

methicillin-resistant staphylococcus aureus (MRSA), menstrual difficulties, urinary tract infection, degenerative joint disease, and headaches. *Id.*

Dr. Zemanek's letters of medical necessity for the four prescriptions were attached to his deposition. R.R. at 278a. The letters for the Lamotrigine and Cymbalta/Duloxetine were both accompanied by fax cover sheets with the word "yes" circled to indicate that Dr. Zemanek was treating Claimant for a work injury and billing Employer's WC carrier. *Id.* The letter of medical necessity for Lexapro was also marked as being for Claimant's work injury but did not have a cover sheet attached. *Id.* The final letter of medical necessity for Hydroxyzine noted that the medication was prescribed for depression in conjunction with the work injury, but the cover sheet had the word "no" circled, indicating that the prescription was not for a work injury and that Employer's WC carrier should not be billed. *Id.* at 278-79a.

The WCJ found Dr. Zemanek's testimony credible, as follows.

> After careful review of all evidence and weighing same, the testimony of Dr. Zemanek is found to be competent and credible on the issues raised by this [P]enalty [P]etition. Dr. Zemanek has been treating Claimant for her mental health issues ***including major depression*** as part of his diagnosis of Bipolar II major depressive type since 2018. Dr. Zemanek credibly testified that the major depression is an aspect of her mood syndrome. Dr. Zemanek has diagnosed ***major depressive disorder*** and has treated Claimant with medication. Dr. Zemanek's testimony that the four medications at issue; Lamotrigine, Cymbalta/[D]uloxetine, Lexapro, and Hydroxyzine are all related to Claimant's work injury is found to be credible. No medical evidence was submitted to contradict the opinions of Dr. Zemanek. Dr. Zemanek completed letters of medical necessity on all four medications spanning 2018 to 2019 relating the medications to the work injury. Dr. Zemanek clearly relates these medications to the work

5

injury of September 18, 1996, that was expanded by agreement in 2003 to include "major depression[."] The fax cover sheet dated March 11, 2019, for the prescription Hydroxyzine has the word "no" circled for the questions are you treating the patient for a work injury and are you billing [W]orkers['] [C]ompensation. The letter of medical necessity bearing the same date contradicts this information, as does the testimony of Dr. Zemanek. The March 11, 2019[] fax cover sheet is not enough to shake the credibility of Dr. Zemanek or his opinions given during testimony based upon the totality of the evidence.

R.R. at 283a-84a (emphases added).

Based on the evidence presented at the hearings, the WCJ concluded that Claimant sustained her burden of proving that Employer violated the Act by failing to pay for the medications prescribed by Dr. Zemanek in connection with her work injury, totaling $39,904.03. R.R. at 284a. The WCJ further noted that "[a]n employer that stops payment of medical treatment based solely on causation is subject to penalties at the discretion of a workers['] compensation [j]udge if the [j]udge finds the bills to be related to the work injury," citing in support *Delarosa v. Workers' Compensation Appeal Board (Masonic Homes)*, 934 A.2d 165, 169-70 (Pa. Cmwlth. 2007). R.R. at 284a. The WCJ assessed a 20% penalty against Employer for violating the Act by failing to pay for the medications. *Id.*

Employer appealed to the Board, arguing that Dr. Zemanek's testimony regarding medical issues was legally incompetent, the WCJ capriciously disregarded uncontroverted evidence of record, and the WCJ improperly expanded the nature of Claimant's adjudicated work injury and Employer's liability. R.R. 287a-92a. The Board affirmed the WCJ's decision and concluded as follows.

> Under Section 306(f.1)(5) of the Act, [77 P.S. §531(5),] medical bills must be paid within 30 days of receipt unless the employer disputed the causal connection or the reasonableness and necessity of the treatment. [Employer]

6

contends that the prescriptions were not causally related to the work injury and that the WCJ misapprehended the nature of its defense; specifically, that Claimant's evidence failed to meet her burden. We do not agree that the WCJ's observation that there were no defense witnesses indicates any such grave misapprehension.

[Employer] further argues that Dr. Zemanek's testimony was worthless, as he disregarded the adjudicated work injury and did not establish the required causal connection between the injury and his treatment. Claimant's work-related diagnoses include major depression and a sleep disorder. The WCJ concluded that Dr. Zemanek's diagnosis of [B]ipolar II, major depressive type[,] encompassed the adjudicated major depression, and that the medications at issue were prescribed to treat Claimant's work-related major depression and sleep disorder.

[Employer] contends that Dr. Zemanek was, in fact, treating a plethora of non-work-related conditions and admitted that he did not attempt to determine the cause of Claimant's emotional condition. In context, Dr. Zemanek testified that he did not delve deeply into Claimant's childhood and family issues; rather, he treated her then-existing condition. Dr. Zemanek related the depression to chronic pain, difficulty with functioning, loss of work, and the stress of chronic pain resulting from the work injury[] and noted the possibility of mood shifts due to the use of steroids in the past. His testimony explaining major depression and major depressive disorder is reminiscent of testimony concerning disc herniations and disc protrusions, where different clinicians read imaging studies accurately but use slightly different descriptions. Medical testimony is not evaluated on the basis of a few words taken out of context. *Lewis* [*v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800 (Pa. 1985)]. We determine no error.

R.R. at 306a-07a. Employer then appealed the Board's order to this Court.[3]

Employer presents three issues for our review. First, Employer argues that the WCJ erred by capriciously disregarding uncontroverted evidence of record that established Dr. Zemanek treated conditions unrelated to Claimant's work injury, and, as such, Employer had no legal obligation to pay for expenses beyond the adjudicated work injury. Second, Employer asserts that the WCJ erred by finding that Dr. Zemanek's testimony regarding medical issues was legally competent. Lastly, Employer argues that the WCJ's decision expanded the adjudicated work injury in violation of res judicata and collateral estoppel principles.

Employer first argues that the WCJ capriciously disregarded case law and uncontroverted evidence establishing that the prescriptions issued by Dr. Zemanek were not related to the adjudicated work injury. Employer asserts that the WCJ discounted evidence that Dr. Zemanek had been treating physical and emotional conditions with no causal connection to Claimant's work injury. Employer argues that certain statements made by Dr. Zemanek undermine his testimony that the medications he prescribed were to treat Claimant's work-related depression. Employer points to the following exchange during cross-examination:

> Q: And part of your job I would think as a therapist is to assist the patient on occasion in trying to figure out what's really bothering them. Would that be fair to say?

[3] Our review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992). Whether an expert's opinion is incompetent is a question of law subject to this Court's plenary review. *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14,16 (Pa. Cmwlth. 2008).

A: Yes, but my role I was the psychopharmocologist treating her just for medication management.

Q: Okay. So[,] your role really wasn't to try to get to the root of what might have been bothering her. Do I understand you correctly?

A: Correct.

Petitioner's Brief at 28; R.R. at 118a-19a. Employer argues that the WCJ erred by not construing this exchange as an admission by Dr. Zemanek that he had no factual basis to offer an opinion on causation. Petitioner's Brief at 28. Claimant responds that the WCJ's decision was supported by substantial evidence and that the WCJ did not capriciously disregard Dr. Zemanek's testimony. Claimant further responds that Employer failed to present a medical expert to challenge Dr. Zemanek's opinions or file a utilization review request to challenge the reasonableness or necessity of the medications.

When properly raised, as it was here, this Court may review for "capricious disregard of material, competent evidence." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard occurs "only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). Further, we are mindful that in WC cases, "the WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness

9

credibility is not subject to our review on appeal." *Id.* Finally, we must review the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

In *Williams*, 862 A.2d 137, our Court considered whether the Board erred in granting the employer's petition to modify the claimant's WC benefits because the claimant failed to pursue an available position within his medical restrictions. The claimant argued that the WCJ capriciously disregarded the testimony of the claimant's medical experts, who opined that the claimant was unable to perform the duties required by the available position. *Id.* at 140-41. The Court emphasized that

> as fact[-]finder, the WCJ is not required to accept even uncontradicted testimony. *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997 (Pa. Cmwlth. 2004). Capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. *Id.* A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence. *Christopher v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 793 A.2d 991 (Pa. Cmwlth. 2002). We emphasize our Supreme Court's pronouncement that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence. *Wintermyer*[,] [812 A.2d at 490].

*Williams*, 862 A.2d at 144. The Court then analyzed and rejected the claimant's argument regarding the WCJ's capricious disregard of the testimony of the claimant's medical expert.

> Counsel for [the c]laimant seems to misapprehend the crucial distinction between a rejection of a witness's testimony, and the capricious disregard thereof. In this matter, the WCJ clearly and detailedly summarized the testimony of [the claimant's medical expert], as evidenced primarily in the WCJ's Finding []. Although the WCJ ultimately found that testimony to not be credible, such a credibility determination is the exclusive province of the WCJ, and such a rejection of testimony is not a disregard therefor, but simply a rejection. A capricious disregard of evidence occurs only when the fact-finder deliberately ignores relevant, competent evidence. *Capasso*.

*Williams*, 862 A.2d at 145. *See also Grooms v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 42 C.D. 2022, filed January 23, 2023), *appeal denied*, 302 A.3d 1193 (Pa. 2023).[4]

Here, the WCJ carefully reviewed the testimony of both Claimant and Dr. Zemanek. The WCJ determined that Claimant's testimony was generally credible regarding her current treatment, side effects, and treatment with Dr. Zemanek. R.R. at 283. The WCJ carefully reviewed and weighed the testimony and evidence presented by Dr. Zemanek and determined that his testimony was "competent and credible on the issues raised by the [P]enalty [P]etition." *Id.* As noted above, the WCJ found that Dr. Zemanek treated Claimant's depression as connected to her work injury, and the medications he prescribed were causally related to her work injury. R.R. at 283a-84a. The WCJ credited Dr. Zemanek's

---

[4] *See* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

testimony and evidence presented that all four medications prescribed related to the work injury of September 18, 1996, that was expanded by agreement in 2003 to include "major depression." *Id.* at 284a. The Board agreed and found that Dr. Zemanek "related the depression to chronic pain, difficulty with functioning, loss of work, and the stress of chronic pain resulting from the work injury[] and noted the possibility of mood shifts due to the use of steroids in the past." R.R. at 306a-07a. Therefore, Employer's argument that the WCJ capriciously disregarded Dr. Zemanek's testimony must fail. The WCJ did not "deliberately ignore[] relevant, competent evidence" when she reviewed the entirety of Dr. Zemanek's testimony and determined that it was credible and competent as to the issues raised by the Penalty Petition. *Williams*, 862 A.2d at 145. We are bound by the WCJ's credibility determinations. *Davis*, 753 A.2d at 909.

Employer next argues that Dr. Zemanek's testimony is legally incompetent because he disregarded or otherwise challenged the adjudicated work injury. Petitioner's Brief at 29. Employer specifically notes the following exchange and argues that it should render Dr. Zemanek's testimony as incompetent.

> Q. Now, Doctor [Zemanek], Attorney Greenberg[, Employer's attorney,] mentioned the accepted injury as being major depression and these letter[s] of medical necessity major depressive disorder. Can you explain the difference if there is a difference?
>
> A. Between major depressive disorder and [B]ipolar II major depressive type?
>
> Q. Actually[,] major depression.
>
> A. And.
>
> Q. Major depressive disorder.

12

A. Major depression is sort of when people complain of being depressed but major depressive disorder is you have couple week period of depression or anhedonia with poor sleep, loss of concentrating, change in appetite, second motor agitation or retardation, helplessness, hopelessness, suicidal thoughts.

Q. And with regard to just major depression?

A. Major depression, again, if it's not a disorder, people can say that they're feeling depressed.

Petitioner's Brief at 30; R.R. at 112a-13a. Employer argues that when an expert medical witness disregards or otherwise challenges the adjudicated work injury, his/her effort to reconfigure the nature and extent of the work injury will be viewed as "worthless [,]" citing in support *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth. 2001). Employer argues that Dr. Zemanek's testimony provided above shows that he disregarded or challenged the accepted work injury of "major depression" by opining that Claimant suffered from "major depressive disorder." Claimant responds that a medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information and must be viewed as a whole, citing in support *Casne*, 962 A.2d 14. Claimant further responds that the WCJ here did not err in crediting Dr. Zemanek's testimony, when it reviewed the entire testimony and declined to interpret Dr. Zemanek's quoted statement as an attempt to challenge the accepted work injury.

We discern no error when the Board affirmed the WCJ regarding the competency of Dr. Zemanek's testimony. The Board explained that

[w]hether medical opinion evidence is competent or equivocal is a question of law based upon a review of the opinion testimony as a whole. *Lewis* [], 498 A.2d 800 []. In conducting such a review, a final decision should not

13

rest upon a few words taken out of context. *Id.* An expert's opinion which is based on assumptions contrary to the established facts is worthless in a workers' compensation proceeding. *Noverati v. W[orkmen's] C[ompensation] A[ppeal] B[oard] (Newtown Squire Inn)*, 686 A.2d 455 (Pa. Cmwlth. 1996).

R.R. at 301a. The Board rejected Employer's argument that Dr. Zemanek's testimony was incompetent based on his explanation about the difference between "major depression" and "major depressive disorder." The Board concluded that

[Dr. Zemanek's] testimony explaining major depression and major depressive disorder is reminiscent of testimony concerning disc herniations and disc protrusions, where different clinicians read imaging studies but use slightly difference descriptions. Medical testimony is not evaluated on the basis of a few words taken out of context. *Lewis*. We determine no error.

R.R. at 307a.

Employer's argument that Dr. Zemanek disregarded or challenged the adjudicated work injury is contradicted by the WCJ's finding based on the credited testimony of Dr. Zemanek that the medications prescribed by Dr. Zemanek are related to Claimant's major depression as included in the adjudicated work injury. R.R. at 284. The Board rejected Employer's argument, noting that "Claimant's work-related diagnoses include major depression and a sleep disorder. The WCJ concluded that Dr. Zemanek's diagnosis of Bipolar II, major depressive type encompassed the adjudicated major depression, and that the medications at issue were prescribed to treat Claimant's work-related major depression and sleep disorder." R.R. at 306a. We may not disturb the WCJ's credibility determinations. *Davis*, 753 A.2d at 909. Further, we decline to do as Employer suggests and take Dr. Zemanek's above-quoted testimony out of context and render his testimony

14

incompetent. Instead, we must view the testimony as a whole. *Lewis*, 498 A.2d at 803. Accordingly, we discern no error in the Board's conclusion on this issue.

Lastly, Employer argues that the WCJ erred in accepting Dr. Zemanek's testimony and granting Claimant's Penalty Petition when Dr. Zemanek impermissibly expanded the description of Claimant's accepted work injury. Employer argues that this expansion of the scope of injury violates the principles of res judicata or collateral estoppel. Employer argues that Dr. Zemanek treated Claimant for injuries outside the adjudicated injury, and Employer should not be responsible for costs of medication used to treat injuries outside the accepted work injury. Claimant again responds that Employer voluntarily agreed to modify the work injury to include major depression, and the WCJ's findings were supported by substantial evidence.

> The doctrine of res judicata encompasses two related, yet distinct, principles: technical res judicata and collateral estoppel. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley),* 665 A.2d 538 (Pa. Cmwlth. 1995). Technical res judicata [] provides that when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded. *Id.* Collateral estoppel, on the other hand, acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment. *Id.*
>
> Technical res judicata applies when the following four factors are present: (1) identity in the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.),* [] 488 A.2d 1177 ([Pa. Cmwlth.] 1985).

15

*Maranc v. Workers' Compensation Appeal Board (Beinenfeld)*, 751 A.2d 1196, 1199 (Pa. Cmwlth. 2000).

We are unpersuaded by Employer's argument on this issue. Employer relies on our decision in *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949 (Pa. Cmwlth. 2008), where this Court found that a claimant's second review petition was barred under technical res judicata and collateral estoppel. The claimant in *Weney* sought to have an NCP amended to include "additional injuries of which he was aware[,] and knew to be related to a particular work incident, during earlier review petition proceedings." *Id.* at 957. Because the claimant attempted to raise a matter through his second review petition that should have been litigated during the earlier proceedings on his first review petition, the claimant's second review petition was barred by technical res judicata. *Id.* at 956. However, the holding in *Weney* is not analogous to this matter.

Here, Claimant was not petitioning for an expansion of the work injury, nor did the holdings by the WCJ and Board describe any new medical conditions to be included in the NCP. As Employer stated in its brief, the adjudicated work injury was amended without dispute in prior litigation to include "major depression" and a "sleep disorder" in connection with the work injury. Petitioner's Brief at 23. Because of our determination that the Board did not err in concluding that Dr. Zemanek's testimony was competent and credible as to Claimant's diagnosis of major depression and the medications he prescribed to treat Claimant's depression, we must also reject Employer's argument that Dr. Zemanek's testimony should be barred by res judicata or collateral estoppel. Because Dr. Zemanek did not seek to expand Claimant's accepted work injury, the findings and conclusions based on his

16

testimony do not constitute an attempt to relitigate the scope of Claimant's work injury. *Maranc*, 751 A.2d at 1199.

An employer that fails to pay for medical treatment based solely on causation is subject to penalties at the discretion of the WCJ, if the WCJ finds the bills to be causally related to the work injury. *Delarosa*, 934 A.2d at 169-70. Here, Employer did not file a review petition to dispute causality or seek a utilization review determination regarding the four medications prescribed to treat Claimant's accepted work injury of depression, but instead took the risk that it would be subject to the Penalty Petition Claimant filed here. Therefore, we discern no error in the WCJ's decision to grant the Penalty Petition and assess the penalty against Employer.

Accordingly, the Board's order is affirmed.


_____
MICHAEL H. WOJCIK, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

St. Luke's Physician Group,       :
                                  :
               Petitioner   :
                                  :
             v.            :  No. 955 C.D. 2022
                                  :
Sheila Kuzo (Workers' Compensation :
Appeal Board),              :
                                  :
             Respondent  :

# **O R D E R**

AND NOW, this 29th day of April, 2024, the Order of the Workers' Compensation Appeal Board dated August 16, 2022, is AFFIRMED.

 

_____
MICHAEL H. WOJCIK, Judge
